

# ARKANSAS COURT OF APPEALS

DIVISION I
No. CV-14-722

| | |
|---|---|
| | **Opinion Delivered** December 17, 2014 |
| TARA RUSSELL<br>APPELLANT | APPEAL FROM THE SEBASTIAN COUNTY CIRCUIT COURT, FORT SMITH DISTRICT |
| V. | [NO. JV-12-322] |
| ARKANSAS DEPARTMENT OF HUMAN SERVICES and MINOR CHILD | HONORABLE JIM SPEARS, JUDGE |
| APPELLEES | AFFIRMED |

**WAYMOND M. BROWN, Judge**

The Sebastian County Circuit Court terminated appellant Tara Russell's parental rights to her minor child, T.R. Russell appeals the termination, arguing that the trial court lacked jurisdiction to reopen a prior, closed dependency-neglect case. Alternatively, appellant argues that the trial court erred by rejecting her request to voluntarily relinquish her parental rights. We find no error and affirm.

The Arkansas Department of Human Services (DHS) became involved with the family in May 2012 due to appellant's drug use and her leaving the young child unattended for at least two hours. Appellant successfully completed the case plan, and T.R. was returned to appellant's custody on June 14, 2013. The case was closed by an order filed on October 23,

2013.[1]  Prior to the closure date, a no-contact order was put in place, preventing David Russell, appellant's then husband, from having contact with the child.[2]  DHS took emergency custody of the child on November 15, 2013, after it became aware that David, who has true findings for sexual and physical abuse, was in violation of the no-contact order.  Additionally, appellant tested positive for marijuana and admitted to smoking "pot."  DHS petitioned the court for emergency custody on November 18, 2013.[3]  The court issued an ex parte order for emergency custody that same day.  T.R. was adjudicated dependent-neglected by an order filed on February 28, 2014, due to parental unfitness and failure to protect.  The court established a goal of reunification with a concurrent plan of adoption.

DHS filed a petition for the termination of appellant's parental rights on April 10, 2014, listing six separate grounds for termination.  The termination hearing took place on May 12, 2014.  At the start of the hearing, appellant's attorney informed the court that appellant had decided to consent to the termination because she could not handle the anxiety and that he would get the consent prepared for appellant.[4]  However, counsel agreed to proceed with the hearing.

Nicole Simon of DHS testified that the department was seeking an involuntary termination because appellant "doesn't really want to give [up] her parental rights.  It

[1]The actual closure date was September 9, 2013.

[2]DNA testing revealed that David was not T.R.'s biological father.

[3]This petition and the orders that followed were filed under the case number of the closed case.

[4]Appellant did not attend the termination hearing.

wouldn't be a voluntary termination for her. It would basically be a coerced termination." She further stated that a voluntary termination was "not a genuine decision. It's just the facts are not in her favor." Appellant's counsel objected to this testimony and the court sustained the objection. However, the court stated that it had already surmised that this would be an involuntary termination.

Counsel argued that appellant "just wanted the dignity of knowing that she did what she thought was best for her child, and that's why she decided to do a consent." The court responded that based on appellant's past credibility and the circumstances of the case, the termination was going to be involuntary. According to the court, appellant had "squandered whatever positive she may have gained by her efforts [due to] her untruthfulness and her inability to follow through." The termination order was filed on May 28, 2014. This timely appeal followed.

Appellant does not challenge the statutory grounds for termination. Instead, citing *Young v. Arkansas Department of Human Services*,[5] appellant argues that the trial court was without jurisdiction to reopen the prior closed case and thus, the resulting termination order is null and void. In *Young*,[6] appellant filed a petition for a change in custody after her child, S.S., had been placed in the permanent custody of Tim and Danielle Sexton. The prior dependency-neglect case was reopened to address the custody matter. Our supreme court held that a circuit court may not reopen a closed dependency-neglect case because once that

---

[5] 2012 Ark. 334 (where a dependency-neglect case was reopened for an action under child-custody law).

[6] *Id.*

3

case is closed, the child is no longer dependent-neglected. However, the court also held that the circuit court had jurisdiction to hear the custody case even though it was outside the subject of proceedings in the juvenile division because circuit courts are the trial courts of general jurisdiction. Unlike the situation in *Young*, this case concerns a subsequent dependency-neglect proceeding, not a custody issue.

Subject-matter jurisdiction is a court's authority to hear and decide a particular type of case.[7] A court lacks subject-matter jurisdiction if it cannot hear a matter under any circumstances and is wholly incompetent to grant the relief sought.[8] The question of subject-matter jurisdiction is always open for review, cannot be waived, can be questioned for the first time on appeal, and can even be raised by the appellate court.[9]

Here, the circuit court had the authority to hear the petition for termination. Circuit courts are established as the trial courts of original jurisdiction of all justiciable matters not otherwise assigned.[10] Under Administrative Order No. 14, the creation of divisions shall in no way limit the powers and duties of the judges to hear all matters within the jurisdiction of the circuit court. Accordingly, we conclude that the circuit court had subject-matter jurisdiction. Any other alleged error regarding the reopening of the closed dependency-neglect case is not properly before us. Appellant failed to raise any argument concerning the

---

[7]*Tripcony v. Ark. Sch. for Deaf*, 2012 Ark. 188, 403 S.W.3d 559.

[8]*Id.*

[9]*Duffy v. Little*, 2011 Ark. 160.

[10]Ark. Const. amend. 80, § 6(A); *Young, supra.*

reopening of the closed case to the circuit court. It is well established that an appellant must raise an issue and make an argument to the circuit court for it to be preserved on appeal.[11]

Alternatively, appellant argues that the circuit court abused its discretion when it refused to allow her to execute a consent to termination. Citing *Rhine v. Arkansas Department of Human Services*,[12] appellant contends that by allowing her to voluntarily terminate her parental rights, T.R. would have received permanency and stability much sooner. In *Rhine*,[13] this court held that it was error for the circuit court to deny Rhine a continuance so that Rhine could execute a consent in order for her mother to adopt the child in question. Here, there was no one waiting to adopt T.R. Additionally, appellant was not present at the hearing to execute a consent or to express her intent to do so.

Consent operates as a ground for termination under our Juvenile Code.[14] A parent may consent to termination of parental rights, subject to the court's approval.[15] Consent does not, however, carry the same onus as involuntary termination where a parent still has other children in his or her custody.[16] Only a prior involuntary termination of parental rights in

---

[11] *See Sanderson v. Ark. Dep't of Human Servs*, 2012 Ark. App. 481.

[12] 101 Ark. App. 370, 278 S.W.3d 118 (2008).

[13] *Id.*

[14] Ark. Code Ann. § 9-27-341(b)(3)(v)(*a*) (Supp. 2013).

[15] *Id.*

[16] *Jordan v. Ark. Dep't of Human Servs*, 2011 Ark. App. 592.

one child serves as a ground to terminate a parent's rights in another child.[17] For that reason, the involuntary termination of appellant's parental rights in this case may have future implications that voluntary termination may not.[18]

The facts of this case are more akin to *Jordan*.[19] In *Jordan*, the circuit court refused Jordan's request to execute a consent on the grounds that the case had already been continued once, that the hearing had been set for a month, and that Jordan had been afforded ample time in which to consent to the termination but appeared ambivalent to do so. Our court affirmed the circuit court, holding that Jordan offered no concrete intention of consenting to termination and that she seemed to condition her consent on the outcome of the hearing. Here, appellant was not present at the hearing to even voice her intent to consent; however, the court heard evidence from Simon that appellant was not genuine. Additionally, the court had already concluded that the case would be an involuntary termination based on appellant's credibility and the circumstances of the case. We cannot say that the trial court abused its discretion by going forward with a decision based on the evidence presented at the termination hearing. Therefore, we affirm.

Affirmed.

HARRISON and VAUGHT, JJ., agree.

*Leah Lanford*, Arkansas Public Defender Commission, for appellant.

*Tabitha Baertels McNulty*, Office of Policy & Legal Services; and *Chrestman Group, PLLC*, by: *Keith Chrestman*, for appellees.

---

[17]*Id*. Ark. Code Ann. § 9–27–341(b)(3)(B)(ix)(*a*)(4) (Supp. 2013).

[18]*Jordan*, *supra*.

[19]*Supra*.